Argued and submitted May 14, affirmed December 3, 2008

## Toni WOLF,
*Petitioner-Appellant,*
*and*

## Sharon TAYLOR,
*Respondent-Respondent.*

Multnomah County Circuit Court
051070408; A134386

197 P3d 585

Geordie Duckler argued the cause and filed the briefs for appellant.

Lisa Almasy Miller argued the cause for respondent. With her on the brief was Dwyer & Miller, LLP.

Before Landau, Presiding Judge, and Brewer, Chief Judge, and Ortega, Judge.*

LANDAU, P. J.

_____

* Brewer, C. J., *vice* Riggs, S. J.

## LANDAU, P. J.

This is an action to dissolve a domestic partnership. The parties entered into a settlement agreement, which resolved their differences as to all matters in dispute, including visitation rights as to their dog. A month later, plaintiff Wolf notified the court that she was rescinding the agreement and moved to reinstate the matter on the active trial docket. Plaintiff asserted as the ground for rescission the impossibility of performance of an agreement as to visitation rights to a dog. The trial court denied the motion. Plaintiff appeals and we affirm.

The relevant facts are not in dispute. In October 2005, plaintiff filed a complaint for dissolution of a domestic partnership. The complaint alleged that the parties had lived together in a domestic partnership since 1989 and that they had ended the relationship in July 2005. The complaint further alleged that, during the course of the relationship, the parties pooled their resources and acquired property, which plaintiff asked be divided in an equitable manner. Defendant Taylor answered, contesting the existence of a domestic partnership and asserting various defenses and counterclaims. The matter was placed on the court's active trial docket.

On April 6, 2006, the parties participated in a settlement conference with Multnomah County Circuit Court Judge Tennyson. The parties ultimately reached an agreement, which was formalized and signed on August 30, 2006. According to the terms of the agreement, "[t]he parties have negotiated a distribution of assets and debts and have agreed to a settlement of all claims that were or might have been asserted" in the litigation, "arising out of or incurred in connection with their 15-year relationship and their alleged domestic partnership." The agreement provides that each party shall have exclusive ownership and possession of numerous items of personal property, vehicles, savings and checking accounts, investments, retirement accounts, and other assets. The agreement provides that each party is responsible for all debts in her own name (the parties had no joint debts). It also provides that defendant has exclusive

ownership of the residence in which the parties had been living. The agreement provides that defendant will pay plaintiff a total of $50,000.

The settlement agreement also includes the following provision concerning the parties' dog, Mike:

> "[Defendant] shall have exclusive ownership of the dog known as 'Mike' but agrees that [plaintiff] can have visits with him. [Plaintiff] agrees she will not allow Mike to be around other dogs, and she will ensure that he will be kept in an enclosed area, and not allowed to get loose. The specific terms of [plaintiff's] visitation with Mike will be resolved at a later date with the assistance of Judge Katherine Tennyson who agreed to retain jurisdiction of that issue."

And the agreement contains the following severability clause:

> "If any of the provisions of this Settlement Agreement and Mutual Release of All Claims are declared or determined by any court to be illegal, invalid, or otherwise unenforceable, the remaining portions, terms and provision[s] shall nevertheless remain in full force and effect."

Following the parties' execution of the agreement, the trial court took the case off the active trial docket and placed it on inactive status. In the meantime, plaintiff developed second thoughts about the agreement. In particular, she became concerned about the provision that pertained to the dog, Mike. Plaintiff fired the lawyer who had represented her up to that point and retained new counsel, who advised her that the dog visitation provision was unenforceable. On September 25, 2006, plaintiff's new lawyer sent a letter to the court and to defendant, informing them that she was rescinding the August 30 settlement agreement and asking the court to place the matter back on active status.

Shortly after that, plaintiff submitted a formal motion to reinstate the dissolution action, followed by a "Memorandum of Points and Authorities on Rescission of Settlement Agreement." In the memorandum, plaintiff explained that there are essentially two grounds for rescinding the settlement agreement in its entirety; both grounds concerned the unlawfulness of the dog visitation provision.

First, plaintiff argued that the dog visitation provision is unlawful because it purports to establish visitation rights to an item of personal property. According to plaintiff, under Oregon law, dogs are personal property, and "[t]here is no common law authority in this state or the entire country that provides for a trial court to grant 'custody' or 'visitation' to personal property." Second, plaintiff argued that the dog visitation provision is unlawful because it is "impossible to perform." She reasoned that the provision may not be performed because "to maintain a time and interest sharing arrangement between two parties as to 'visitation' of a dog" is "incompatible with principles of ownership" and because "there is no reasonable or legal way for them to succeed in accomplishing" its purposes. Defendant responded that, whether or not a court would be authorized to approve a pet visitation arrangement in a dissolution judgment, nothing in Oregon law prevents parties from entering into a private settlement agreement that includes such an arrangement.

The trial court denied plaintiff's motion. The court concluded that the settlement agreement remains in full force and effect and that there are no grounds for reinstating the dissolution action.

On appeal, plaintiff assigns error to the denial of the motion to reinstate the matter on the active trial docket. Reprising her arguments before the trial court about the invalidity of pet visitation provisions in dissolution judgments, she contends that the court incorrectly concluded that the invalidity of the dog visitation provision of the settlement agreement did not establish grounds for rescinding the entire agreement. Defendant responds that, regardless of whether a trial court could have included a pet visitation provision in a dissolution judgment, parties are not precluded from including such a provision in settlement agreements such as the one at issue in this case. In any event, defendant argues, even assuming that the dog visitation provision in this case is unlawful, that would simply trigger the severability provision of the agreement and would not provide grounds for rescission of the agreement in its entirety.

In general terms, it may fairly be said that we review a trial court's decision on a motion to reinstate for an abuse of

discretion. *See, e.g., Boise Cascade Corp. v. Board of Forestry,* 216 Or App 338, 356-57, 174 P3d 587 (2007), *rev den,* 344 Or 390, *cert den,* ____ US ____ , 129 S Ct 346 (2008). But when the exercise of discretion turns on a legal determination, we review that determination as a matter of law. *State v. Rogers,* 330 Or 282, 315, 4 P3d 1261 (2000); *Shumake v. Foshee,* 197 Or App 255, 261-62, 105 P3d 919 (2005). This is such a case, in which the trial court's decision on plaintiff's motion to reinstate depended on its resolution of the underlying legal question concerning the validity of plaintiff's purported rescission of the settlement agreement in its entirety because of the supposed invalidity of the dog visitation provision.

■ As a rule, "[i]llegal contracts may be rescinded by the party not at fault." *Rugemer v. Rhea,* 153 Or App 400, 404 n 1, 957 P2d 184 (1998). And whether an agreement regarding visitation of a dog is illegal certainly is an interesting question. *See, e.g.,* Ann Hartwell Britton, *Bones of Contention: Custody of Family Pets,* 20 J Am Acad Matrim Law 1 (2006); Rebecca J. Huss, *Separation, Custody, and Estate Planning Issues Relating to Companion Animals,* 74 U Colo L Rev 181 (2003). As plaintiff accurately reports, there are decisions from courts in other jurisdictions that hold that such provisions are unenforceable. *See, e.g., DeSanctis v. Pritchard,* 2002 PA Super 221 ¶ 5, 803 A2d 230, 232 (Pa Super Ct 2002), *appeal den,* 572 Pa 757, 818 A2d 504 (Pa 2003) ("any terms set forth in the Agreement are void to the extent that they attempt to award custodial visitation with or shared custody of personal property," such as pets).

Plaintiff, however, does not explain—and we do not understand—why the unenforceability of the dog visitation provision necessarily means that the *entire settlement agreement* becomes invalid, thus justifying its rescission. The question seems especially pertinent in light of the fact that the settlement agreement itself plainly establishes what happens should any single provision turn out to be "illegal, invalid, or otherwise unenforceable." The severability provision of the agreement provides that the offending provision must be severed, while "the remaining portions, terms and provision[s] shall nevertheless remain in full force and effect."

Directly on point in that regard is our opinion in *McInnis and McInnis*, 199 Or App 223, 110 P3d 639, *rev dismissed*, 338 Or 681 (2005). In that case, the parties entered into a marital settlement agreement. That agreement required the husband to pay the wife spousal support for approximately seven years. The agreement further provided that the spousal support obligation shall be "nonmodifiable." In fact, the agreement restated that intention in four distinct ways: (1) it stated that the parties waived the right to seek a modification of spousal support; (2) it stated that the wife would be estopped from seeking a modification of spousal support; (3) it stated that, if the wife were to successfully obtain a modification of spousal support, she would be obligated to indemnify the husband for any resulting obligation to pay the support; and (4) it stated that the court was divested of jurisdiction to rule on a motion to modify spousal support. The agreement also included a severability clause stating that, if any provision were declared invalid, the balance would remain enforceable. *Id.* at 225-26.

Shortly before the seven-year support obligation was set to end, the wife moved for a modification of the obligation, seeking an extension of support. The husband objected on the basis of the terms of the settlement agreement. The trial court declared the agreement unenforceable because an agreement to divest a court of jurisdiction is clearly unenforceable. *Id.* at 227.

We reversed. We held that the trial court was correct in concluding that the particular provision purporting to divest the court of jurisdiction was unlawful. *Id.* at 234. We held that the trial court erred, however, in concluding that the balance of the agreement was thereby rendered unenforceable. In light of the severability clause, we held, the invalidity of that particular provision did not affect the validity of the remaining provisions concerning the modification of spousal support. And, because the provision in which the wife plainly waived the right to seek spousal support did not suffer the same legal infirmity as did the one divesting the court of jurisdiction, we concluded that the trial court erred in failing to give the agreement—with the invalid jurisdictional provision severed from it—full force and effect. *Id.* at 235, 240.

Interestingly, the very authorities on which plaintiff relies to establish the invalidity of dog visitation provisions illustrate the same point. In *DeSanctis*, for example, the husband and the wife entered into a marital settlement agreement that included a declaration that their dog, Barney, was to be the property of the wife, though the husband was to be allowed visitation. The Pennsylvania Superior Court declared that state law did not permit parties to a dissolution to agree to a visitation schedule for items of personal property. 2002 PA Super 221 ¶ 5, 803 A2d at 232. The court did not declare the entire agreement invalid, however. It simply declared the visitation provision invalid and enforced the remaining provisions, in particular, the provision awarding ownership of Barney to the wife. *Id.*, 803 A2d at 233.

In light of the severability provision contained in the settlement agreement in this case, we need not determine whether the dog visitation provision is valid. The only issue before the trial court and us is whether the purported invalidity of the visitation provision justifies rescission of the entire agreement, which, in turn, would justify reinstating the case to the active trial docket. Even assuming the invalidity of the dog visitation provision, however, the offending provision would be severed from the agreement, leaving the balance "in full force and effect." An invalid dog visitation provision, in other words, would not justify rescission of the entire settlement agreement. Given that plaintiff's attempted rescission of the entire settlement agreement was the only asserted basis for her motion to reinstate, it necessarily follows that the trial court correctly denied the motion.

Affirmed.