Argued and submitted November 26, 2008, affirmed on appeal and cross-appeal
May 27, 2009

In the Matter of the Marriage of

Keri Ann HALEY,
*Petitioner-Respondent,*
*Cross-Appellant,*

*and*

Ronald Dean HALEY,
*Respondent-Appellant,*
*Cross-Respondent.*

Lane County Circuit Court
150413044; A134174

208 P3d 1006

George W. Kelly argued the cause and filed the briefs for appellant - cross-respondent.

Stacey D. Smith argued the cause for respondent - cross-appellant. With her on the briefs was Spinner & Schrank.

Before Haselton, Presiding Judge, and Edmonds, Judge, and Rosenblum, Judge.

ROSENBLUM, J.

**ROSENBLUM, J.**

Husband appeals, and wife cross-appeals, from the trial court's November 2006 supplemental judgments in this domestic relations case. Husband assigns error to the trial court's denial of his motion to reduce or terminate his spousal support obligation. Wife assigns error to the court's denial of her request for a money judgment based on husband's failure to pay debts that were allocated to husband in the judgment dissolving their marriage and dividing their property. We reject without discussion wife's arguments in support of her cross-appeal. We also reject without discussion husband's arguments concerning transitional spousal support. With respect to maintenance spousal support, we conclude on *de novo* review that husband failed to establish a sufficient basis for modification. Accordingly, we affirm.

We take from the record the facts pertinent to husband's arguments concerning maintenance spousal support. Husband owns and works for American Refrigeration (AR), a subchapter S corporation located in Eugene. Husband also owns H&W Investments, LLC, which owns the property occupied by AR. AR pays rent to H&W. Before their marriage was dissolved, wife owned 50 percent of the shares in both companies.

In 2004, AR earned $77,900 in profits; husband and wife thus each earned $38,950 as shareholders. In addition, AR paid husband $30,673 in salary, making his total income from the company $69,623. Wife performed secretarial work for the company for essentially no pay; she testified that, in 2004, she worked for the company nearly full time until sometime in May, when the parties separated, and that AR paid her a total of $600 for that period. Wife also worked as a secretary for a lawyer in Eugene.

The parties' marriage was dissolved in May 2005, after 16 years. The parties stipulated that, at the time of the dissolution, husband's gross monthly income was $5,731 and wife's monthly income was $2,300. The dissolution court awarded wife transitional spousal support of $500 per month for five years and maintenance support of $500 per month for 10 years. The court awarded wife custody of the parties' two children, with parenting time for husband on alternating

weekends, holidays, and in the summer. It ordered husband to pay wife $662 monthly for child support. As part of the property distribution, the court awarded husband wife's shares in both AR and H&W.

In June 2005, wife quit her job and moved to Portland to live with her then-fiancé, Bushor, whom she married four months later. Bushor earns $34,000 per year. Wife initially did not look for a new job.

Husband filed a motion to modify the spousal support award in December 2005. A hearing was held on the motion on August 3, 2006. At the time of the hearing, wife was pregnant and, although she had recently begun looking for a job, she had not resumed working. Husband argued that, in light of wife's remarriage and her new husband's income, wife no longer needed spousal support. He also argued that his own income had diminished and that he could no longer afford to pay the support.

At the hearing, husband testified that, in 2005, AR had begun to experience a downturn in business. He presented evidence that, although his salary increased from the year before, to $52,538, the company lost $1,541 in 2005. AR's accountant, Adkisson, testified that, in 2006, husband drew a monthly salary of $4,000 through mid-July. He stated that, earlier in the week of the modification hearing, he had reviewed the company's income and expense records and determined that AR had suffered an "operating loss" of approximately $10,000 and a net loss of $8,000 in the first six months of 2006. He testified that, in reviewing the records, he had seen some checks that had been used to pay personal expenses for husband, but he indicated that he had not counted those payments as corporate expenses in determining AR's operating loss. Adkisson testified that he had advised husband to reduce his salary to $2,500 per month in order to keep the company solvent, which husband did. He also testified that the rent that AR pays to H&W is sufficient only to cover the mortgage on the property. Thus, although H&W's equity interest in the property increases with each payment, husband receives no usable income from H&W.

Husband testified that the reduction in AR's income was largely attributable to a change in the market for commercial refrigeration work, asserting that he had lost several major clients. He also testified that AR's expenses had increased because he had to hire a secretary to perform work that wife had previously done. According to husband, he had to pay the new employee about $40,000 per year.

Wife adduced evidence that husband's actual income was greater than his salary alone. For example, she submitted as an exhibit an accounting record from AR showing that, in 2005, the company paid more than $23,000 for expenses that appear largely to be personal expenses incurred by husband. Husband acknowledged that the exhibit was accurate. Wife also introduced evidence that AR pays husband's health insurance premiums for him.

Wife also adduced evidence that Bushor has sole custody of two children from a former marriage, receives no child support from his former wife, and has substantial debt obligations that were incurred during his previous marriage. She thus challenged husband's assertion that she no longer needed spousal support, given that she and Bushor were supporting a household with six—soon to be seven—members.

■ After receiving the evidence and hearing the parties' arguments, the trial court concluded that husband had not met his burden of proving a substantial change in economic circumstances, and it denied the motion to modify.

On appeal, husband does not argue, as he did before the trial court, that any change in wife's circumstances warrants a change in the maintenance support award. He argues only that his own financial circumstances have changed and that he cannot afford to pay spousal support at the same level ordered in the dissolution judgment. He notes that the dissolution court ordered maintenance support based on "the duration of the parties' marriage and continuing disparity in their respective incomes." Citing wife's stipulation before the dissolution court that her monthly income was $2,300 and the evidence that his own salary has been reduced to $2,500 per month, husband contends that the purpose of the maintenance support award—reducing the income disparity—has

been satisfied. According to husband, the evidence in the record indicates that the reduction in his income is likely to continue indefinitely.

██ We conclude that the record before us is not sufficiently definite as to husband's income to satisfy his burden of proof. Modification of a spousal support award is proper if the original purpose of the award has been fulfilled or if changed circumstances have substantially affected the obligor's ability to pay or the obligee's need for support. *Miller and Miller*, 207 Or App 198, 204, 140 P3d 1172, *adh'd to as clarified on recons*, 208 Or App 483, 144 P3 1061 (2006). The burden of establishing a change of circumstances is on the party requesting the modification of support. *Id.* at 205.

The record in this case supports husband's assertion that his monthly salary was reduced from $4,000 to $2,500 shortly before the modification hearing. However, the evidence that wife introduced—in particular, the accounting document showing personal expenses that AR paid on husband's behalf in 2005—indicates that husband had a practice of using AR funds to augment his income beyond his salary.[1] Although wife did not adduce similar accounting documents for 2006, Adkisson testified that he saw checks used to pay personal expenses when he was reviewing AR's records for the first six months of 2006. That testimony gives rise to the inference that husband continued the practice of using AR funds to pay personal expenses. The upshot is that husband's total monthly income in 2006 was more than $4,000 through mid-July and likely was more than $2,500 after he reduced his salary at Adkisson's suggestion. Because the record does not establish how much additional income husband receives from AR in the form of such payments on his behalf, we cannot determine how much, if at all, husband's total income has actually diminished since the dissolution judgment was entered. Given that husband has the burden of proof, that deficiency is fatal to his case.

---

[1] We do not mean to imply that husband's income in 2005 was necessarily more than the $52,838 that husband reported on his 2005 income tax return. It could be that that figure represents husband's salary together with the expenses that AR paid on his behalf.

In summary, the record does not establish how much husband's income has diminished. It follows that husband did not show that the disparity in the parties' income has been eliminated or, consequently, that the purpose of the maintenance support award has been satisfied. Nor did he prove a substantial change in circumstances. Accordingly, the record does not support modification of the spousal support award.

Affirmed on appeal and cross-appeal.